IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | No. 4:16-cr-00170-SWW |
| | * | |
| | * | |
| ROY LEE BOLES, JR., | * | |
| | * | |
| Defendant. | * | |

ORDER

Roy Lee Boles, Jr. is under indictment for being a felon in possession of a firearm. Trial is currently scheduled for June 5, 2017.

Before the Court is a motion of Boles to suppress what he claims is illegally obtained evidence and statements [doc.#14]. The United States has responded in opposition to Boles's motion. The Court held a hearing on Boles's motion to suppress on the morning of February 8, 2017, after which Boles and the United States filed supplemental briefs. For the reasons that follow, the Court denies Boles's motion to suppress.

I.

On March 19, 2016, at approximately 3:45 p.m., Officer Daniel Haley, a sergeant in the patrol division of the North Little Rock, Arkansas, Police Department, was on patrol in North Little Rock when a tan Buick Regal in which Boles was a passenger turned left in front of him and proceeded onto a side street. Officer Haley observed that the windshield of the Buick had several cracks on the driver's side that were obstructing

the driver's view.  He stated that the initial crack was approximately a foot long and that it then splintered off, some 18 inches to two feet, although he stated his memory was "vague[]" of how big the cracked windshield was.  When asked what statute allows him to stop a car for a cracked windshield, Officer Haley responded that "[t]here is a "windshield obstruction statute" and that "there is one in reference to an obstructed driver's view.  I don't know what the actual statute is.  I believe it's called 'obstructed driver's view.'"

Because of the cracks in the windshield, Officer Haley activated his blue lights to initiate a traffic stop.  About that time, the Buick pulled over to the curb.  It was Officer Haley's understanding that the Buick was coming to park at its destination and that the occupants of the Buick did not know he was there.

After the Buick came to a stop, Officer Haley observed the passenger in the Buick reach up under his seat as if he was placing something there.  At that point, Boles exited the passenger side of the Buick and was walking away.  Officer Haley, who had exited his patrol car, ordered Boles to get back in the Buick.  Boles eventually complied with Officer Haley's demand.  About that time, a second officer, Officer Jeffrey Elenbaas, arrived on the scene.  Officer Haley approached the driver's side of the Buick while Officer Elenbass made contact with Boles.  Officer Haley stated he could smell marijuana coming from the Buick and that he observed "marijuana shake," *i.e.*, leaves and stems, scattered on the seat and on Boles's lap.  Officer Haley had the driver exit the Buick and patted him down.  Officer Haley located marijuana on the driver and placed him under

arrest.

In the meantime, Officer Elenbass had Boles exit the Buick and patted him down, finding nothing. Officer Elenbass stated he only "glanced" at the crack in the windshield and that "it was enough to be beyond visible, but anything beyond that, I don't know."

While Officer Elenbass was questioning Boles at the back of the Buick, Officer Haley searched the Buick, including under Boles's seat, and located a handgun. At that point, Boles was placed under arrest.

No pictures were taken of the cracks in the windshiel. Officer Haley stated he "never have taken them of that"–and no ticket was issued for the cracked windshield because the driver had just purchased the vehicle. The mother of the driver arrived on the scene and was allowed to drive the Buick home, even though Officer Haley felt the car was unsafe for driving, because, according to Officer Haley, it was five or six blocks away. Officer Haley states he told the mother, "Hey, we're not going to tow the car. It's a pretty good expense. Your son is working. If you will drive it home and get the windshield fixed, we will call it even on that."

II.

Boles argues that the only information available regarding the March 19, 2016 traffic stop comes from Officer Haley's and Officer Elenbaas's incident reports, which alleged only that Officer Haley initiated the traffic stop because the Buick had cracks in the windshield. Boles argues that merely operating a vehicle with cracks in the windshield is not illegal under Arkansas law, that the cracks in the windshield were not

significant enough to violate the vehicle safety statute, and that there was no testimony that the cracks in the windshield impaired the structural integrity of the vehicle. Boles argues that Officer Haley thus did not have probable cause or an objectively reasonable and articulable suspicion that a traffic violation had occurred to justify the traffic stop.

A.

Any traffic violation, however minor, provides probable cause for a traffic stop. *United States v. Gadson*, — Fed.Appx. —, 2016 WL 7030357, at *1 (8th Cir. Dec. 2, 2016) (per curiam) (quotation marks and citation omitted). As long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law he may conduct a traffic stop. *Id.* In this respect, an officer may make a traffic stop based on an objectively reasonable mistake of law. *Id.*, at *2. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016) (quotation marks and citation omitted).

Under Ark. Code Ann. § 27–32–101(a)(2)(A), "[a]ny law enforcement officer having reason to believe that a vehicle may have safety defects shall have cause to stop the vehicle and inspect for safety defects." Here, Officer Haley observed that the Buick had cracks in the windshield that obstructed the driver's view. Officer Haley thus had probable cause to initiate the traffic stop of the Buick. See *United States v. Davis*, 598 Fed.Appx. 472 (8th Cir. 2015) (per curiam) ("Driving a vehicle with a windshield cracked across the driver's field of vision, like the cracked windshield here, is a 'safety defect' under Ark. Code Ann. § 27–32–101(a)(2)(A)," thus providing probable cause to initiate

the traffic stop); *Villanueva v. State,* 2013 Ark. 70, 426 S.W.3d 399 (Supreme Court of Arkansas held that a windshield crack that the officer testified went all the way across the windshield and which the Supreme Court characterized as "running from roof post to roof post across the driver's field of vision" was the type of "safety defect" contemplated by Ark. Code Ann. § 27–32–101(a)(2)(A), thus supporting the officer's stop of defendant's vehicle).[1]

III.

For the foregoing reasons, the Court denies Boles's motion to suppress evidence and statements [doc.#14].

IT IS SO ORDERED this 16th day of March 2017.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[1] The fact that Officer Haley did not know the precise name of the vehicle safety statute is of no import under these circumstances. See *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) ("a state trooper has probable cause to make a traffic stop even if he does not cite to the proper statute or use the precise language of the relevant statute at the time he makes the stop") (citing *United States v. Guevara*, 731 F.3d 828-29 (8th Cir. 2014)).